IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| NIKKI DANIELLE MARSHALL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:13-CV-00029-TFM |
| | ) | [wo] |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Nikki Danielle Marshall ("Plaintiff" or "Marshall") applied for supplemental security income under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1383(c)(3), on January 20, 2010. Tr. 68. After being denied, Marshall timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on April 26, 2011. Tr. 38, 44. Marshall subsequently petitioned for review to the Appeals Council, which rejected review of Marshall's case on November 23, 2012. Tr. 1. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636(c). After careful scrutiny of the record and the parties' briefs, and for the reasons herein explained, the Court AFFIRMS the Commissioner's decision.

## I. Nature of the Case

Marshall seeks judicial review of the Commissioner's decision denying her

application for supplemental security income benefits. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. Standard of Review

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district

court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

## III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement,

provided they are both insured and disabled, regardless of indigence.[1] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2] Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1) Is the person presently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

Residual Functional Capacity ("RFC"). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

## IV. Administrative Findings and Conclusions

Marshall was born on February 9, 1983 and was twenty-six years old, "a younger individual," on the date she filed the application, January 20, 2010. 20 C.F.R. 416.963; Tr. 37, 68. Marshall alleges that she has been disabled since June 1, 2009. Tr. 121. Marshall has a limited education, attending school but failing to complete the seventh grade. Tr. 37. Marshall's past work is light and semi-skilled, as she has worked only in two jobs as a short order cook. Tr. 37, 62, 140, 144. She has the ability to communicate

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

in English. Tr. 37.

Marshall was initially evaluated by Josue Becerra, M.D., a psychiatrist at Enterprise Behavioral Health, in October 2008 for her complaints of mood swings. Tr. 216-219. Following this initial evaluation, Plaintiff was seen on occasion at Enterprise Behavioral Health, generally for prescription refills or changes in medication. Tr. 184-191, 210-215, 216-219, 223-224. In May 2009, Dr. Becerra examined Plaintiff again and found that Plaintiff was "doing very well" and that she exhibited normal behavior; was fully alert; had good attention span, goal-directed thought processes, and good impulse control; had an appropriate affect and a happy mood; and had average judgment/insight. Tr. 187. In the same month, Joseph McGinn, M.D., a psychiatrist at Enterprise Behavioral Health, diagnosed Plaintiff with a mood disorder and attention deficit hyperactivity disorder ("ADHD"). Tr. 186. During a follow-up examination on January 2010, Shakir Meghani, M.D., a psychiatrist at Enterprise Behavioral Health, found that Plaintiff continued to exhibit normal behavior; was fully alert; had good attention span, memory and impulse control; goal-directed thought processes; average judgment/insight and an "OK" mood. Tr. 184.

In March 2010, Melissa F. Jackson, Ph.D., a non-examining State agency psychological consultant, reviewed the medical records and completed a psychiatric review technique form ("PRTF") and a mental RFC assessment. Tr. 192-205, 206-208. In the PRTF, Dr. Jackson concluded that Plaintiff was subject to mild restrictions on her activities of daily living and mild difficulties in maintaining concentration, persistence, or pace, along with moderate difficulties in maintaining social functioning. Tr. 202. In her

mental RFC assessment, however, Dr. Jackson opined that Plaintiff was not significantly limited in understanding and memory, sustaining concentration and persistence, and adaptation within the work environment. Tr. 206-207. Additionally, regarding social interaction, Dr. Jackson opined that Plaintiff was no more than moderately limited in her abilities to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Tr. 207. Dr. Jackson opined that Plaintiff was not significantly limited in her ability to ask simple questions or request assistance, maintain socially appropriate behavior, or to adhere to basic standards of neatness and cleanliness. Tr. 207. Dr. Jackson also indicated that Plaintiff should have infrequent contact with the general public and coworkers and should not be in intensive or prolonged proximity with others. Tr. 208.

Later, in August 2010, Dr. Meghani completed a mental capacity evaluation form at the request of Plaintiff's counsel. Tr. 220-222. Dr. Meghani circled "marked" for the estimated degree of impairment in 18 specific areas with the exception of one area (ability to understand, remember and carry out simple instructions) for which Dr. Meghani did not offer an opinion. Tr. 220-222. In September 2010, Dr. Meghani found that Plaintiff exhibited normal behavior, full alertness, goal-directed thought processes, appropriate affect, good memory and impulse control, and average judgment/insight despite circling "marked" on the mental capacity evaluation form the previous month. Tr. 224.

In April 2011, Dr. Meghani assessed Plaintiff and found normal behavior and normal psycho motor activity. Tr. 223. Dr. Meghani noted that Plaintiff was fully alert

and had fair attention span, memory and impulse control; goal-directed thought processes and a labile affect; and that she had made fair progress toward treatment goals. Tr. 223.

At the administrative hearing, Marshall testified that she had not worked at a job since June 2009, that she quit her two previous jobs, and that she was unable to work because she panics. Tr. 49-50. Marshall testified that instead of working, she would "bounce around," clean her house, and tend to her animals. Tr. 51. Additionally, Marshall testified that she was currently in a custody battle for her two minor children (ages six and nine) after losing custody in August 2010 because Marshall was living with her mother while a sex offender was also living in the same home. Tr. 54-55.

At the conclusion of the administrative hearing, the ALJ asked Barry Murphy, an impartial vocational expert, to assume a hypothetical individual of Marshall's age, education, work experience, and limitations determined by the ALJ to be characteristic of Marshall, and determine what work was available for the hypothetical individual. Tr. 63-64. Mr. Murphy testified that such an individual could not perform Marshall's past work as a short order cook, but could perform the work of representative jobs of janitor, painter, and automobile detailer. Tr. 64-66.

After hearing Marshall's testimony and reviewing the medical records, the ALJ determined that Marshall has severe impairments, including mood disorder, bipolar disorder, and ADHD, which cause more than minimal functional limitations and have lasted at least twelve months. Tr. 32. However, the ALJ determined that Marshall does not have an impairment or a combination of impairments that meets or medically equals one of the Commissioner's listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

1 (20 C.F.R. 416.920(d), 416.925 and 416.926). Tr. 32. The ALJ expressly found the following:

> [T]he claimant has the residual functioning capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Due to medicinal side effects, the claimant should avoid all moving machinery, exposure of unprotected heights, and driving equipment. The claimant should also avoid all interactions with the general public. Moreover, the claimant should be limited to simple, routine, and repetitive tasks; with a low stress job, defined as having occasionally [sic] decision making, changes in the work setting, and work judgment. Also, the claimant would need to be isolated for most of the workday. Due to panic or psychological factors, the claimant would have mild to moderate deficits with persistence, pace, and concentration; which is defined as off task for five percent of the work day.

Tr. 34. The ALJ found that Marshall is unable to perform any past relevant work. Tr. 37. However, taking into consideration Marshall's age, education, work experience, and residual functioning capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 37.

## V. ISSUES

Marshall raises the following issues for judicial review:

(1) Whether the ALJ erred when formulating the RFC in giving more weight to the opinion of a state agency physician and no weight to the opinion of the treating physician.

(2) Whether the record was insufficient to make a determination regarding disability such that the ALJ should have recontacted Plaintiff's treating physician or ordered a consultative examination.

## VI. Discussion

### A. The ALJ did not err in giving more weight to the opinion of a state agency physician and no weight to the opinion of the treating physician.

Pursuant to the Eleventh Circuit's holding in *Vuxta v. Comm'r of Soc. Sec.*, the ALJ is required to explain the weight accorded to Dr. Jackson, a non-examining state psychologist, because he did not give controlling weight to Dr. Meghani, Plaintiff's treating physician. 194 Fed. Appx. 874 (11th Cir. 2006). Plaintiff argues that the ALJ failed to mention and did not explain the weight she gave to Dr. Jackson, and as a result, remand is required in order for the ALJ to explain its consideration of its opinion. *Id.*; *see* Doc. 10 at 5.

The court recognizes that the ALJ did not specify how much weight she accorded to Dr. Jackson's opinion; however, it is clear from review of her administrative decision that she implicitly assigned more weight to Dr. Jackson's opinion than to Dr. Meghani's opinion. Tr. 35-36 ("I accord no weight to the mental activity form [completed by Dr. Meghani]."). Failure to explicitly delineate the extent to which an ALJ relies upon one opinion over another does not in and of itself warrant reversal or remand. *See Kemp v. Astrue*, 308 F. Appx. 423, 426 (11th Cir. 2009) (unpublished) (holding that an ALJ may make implicit findings); *Henry ex rel. Henry v. Barnhart*, 156 Fed. Appx. 171 (11th Cir. 2005) (holding that the ALJ did not err in the weight he gave a doctor's opinion despite not explicitly stating what that weight was, noting that implicitly giving weight is sufficient to survive review).

The opinion of an examining physician, such as Dr. Meghani, is generally entitled

to more weight than the opinion of a non-examining physician, such as Dr. Jackson; however, an ALJ is not absolutely required to accord substantial or considerable weight to the examining physician if the evidence supports the non-examining physician's opinion and good cause is shown to the contrary of the examining physician's opinion. *See Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (finding that good cause exists to discount the weight of a treating physician's opinion when it is not bolstered by the evidence, evidence supported a contrary finding, or the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records) (citing *Philips*, 357 F.3d at 1240-41; *see also Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). Specifically, a treating physician's opinion is entitled to controlling weight only if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *Patterson*, 983 F. Supp. at 1414 (citing 20 C.F.R. § 404.1527(e); *see also Creech v. Apfel*, 12 F. Supp.2d 1293, 1298 (M.D. Fla. 1998) (finding that the ALJ correctly noted that the treating source's medical findings were inconsistent with his own examination reports as well as with other medical findings, which were based, in part, on objective testing). The ALJ must provide the reasons why good cause exists to discount the weight of the treating physician's opinion; failure to do so constitutes reversible error. *See Markell v. Astrue*, Case No. 8:06-cv-1720-T-TBM, 2007 WL 4482245 (M.D. Fla. Dec. 19, 2007) (where the court agreed with the claimant that in assessing the claimant's residual functioning capacity, the ALJ erred in not expressly addressing the conclusions of a non-treating, examining doctor, noting the lack of any express statement by the ALJ as to why

the doctor's opinion was not adopted, saying that "pursuant to the regulations, the ALJ was at least obliged to explain why he ignored this doctor's opinion."); *Lewis*, 125 F.3d at 1440. Here, the ALJ's decision to discount the weight afforded to Dr. Meghani's opinion is supported by substantial evidence.

First, while Dr. Meghani completed a mental capacity evaluation in August 2010 that would, by itself, perhaps lend support to a finding of disability, virtually every report of examination at Enterprise Behavior Health from Plaintiff's initial October 2008 evaluation through April 2011, including Dr. Meghani's own September 2010 and April 2011 assessments, reflect that Plaintiff exhibited a normal current mental status. Tr. 184. Dr. Meghani noted that Plaintiff was fully alert, had fair to good attention span, and exhibited goal-directed thought processes and appropriate affect, and normal behavior and psycho motor activity. Tr. 184-191, 210-215, 216-219, 223-224. Dr. Meghani's August 2010 opinion is not only inconsistent with every other opinion presented in the record, but is also inconsistent with her own previous and later opinions; such inconsistency illustrates that Dr. Meghani's opinions should not be afforded substantial weight, if any, in disability proceedings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155 (11th Cir. 2004) (holding that the ALJ's decision to discount a treating physician's opinion that the claimant was totally and permanently disabled was supported by substantial evidence as this opinion was inconsistent with the physician's treatment notes in which he noted that the claimant was "improved" and "doing well" only three weeks after concluding that the claimant was unable to work); *see Fuller v. Massanari*, Case No. CIV. A. 00-0763-RV-M, 2001 WL 530425 at *3 (S.D. Ala. May 11, 2001) (where the

court, in affirming the ALJ's reliance on the opinion of a psychologist, who testified at the hearing over the opinion of two psychiatrists and finding that the opinion of the two psychiatrists was not supported by "other objective evidence of record," noted that the opinion of one psychiatrist was not consistent with his own observations). Dr. Meghani's opinion is contrary to the objective evidence in the record, and for that reason, the ALJ was permitted to reject his opinion. *See Wainwright v. Comm'r of Soc. Sec.*, No 06-15638, 2007 WL 708971 (11th Cir. Mar. 9, 2007) (unpublished opinion) (holding that an ALJ was entitled to reject the examining psychologist's opinion because his "opinion was contrary to the opinions and assessments of the other state agency psychologists who found that Wainwright was only moderately limited in her ability to perform work-related activities" and that "his opinion was not entitled to any special weight, particularly since it was contrasted by the other medical evidence"); *see also Davison v. Astrue*, 370 Fed. Appx. 995, 997 (11th Cir. 2010) (holding that the ALJ's reliance on a non-examining physician's assessment was not error as it was generally consistent with that of the examining doctor).

Second, the ALJ determined that Dr. Meghani did not explain what evidence supported his opinions on the check-the-box style form used in his August 2010 evaluation. In fact, as the ALJ found, the form, as well as Dr. Meghani's own reports, did not disclose any significant clinical or diagnostic findings that would support the "marked" listings on the check-the-box form to support Plaintiff's complaints of disabling symptoms. Tr. 35. Dr. Meghani's conclusory opinion did not include any supporting medically acceptable clinical or laboratory diagnostic techniques. *See Burgin v. Cmm'r*,

420 Fed. Appx. 901, 904 (11th Cir. 2011) (holding that a doctor's checkmarks on a questionnaire, with no supporting explanation, did not undermine substantial evidence supporting the ALJ's decision) (citing *Lewis*, 125 F.3d at 1440); *Osborn v. Barnhart*, 194 Fed. Appx. 654 (11th Cir. 2006) (holding that substantial evidence supported the ALJ's decision to give more weight to the state agency's evaluation and given only minimal weight to the opinion of the claimant's treating physician because it was "nothing more than a conclusory statement unaccompanied by objective medical evidence" and did not indicate the limitations that the diagnoses placed on the claimant's ability to work); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987) (holding that a brief and conclusory statement that is not supported by medical findings is not persuasive evidence of disability); *Daughtry v. Barnhart*, 347 F. Supp.2d 1135, 1140 (M.D. Ala. 2004) (holding that the ALJ's reasons for rejecting the opinion of the claimant's treating physician met the "good cause" requirement as the record was devoid of clinical findings which supported the conclusion that the claimant suffered from fibromyalgia).

Based on the foregoing, the court concludes that the ALJ's decision to discount Dr. Meghani's August 2010 opinion is supported by substantial evidence. Consequently, Marshall is entitled to no relief on this basis.

**B. The record was sufficient to make a determination regarding disability and the ALJ was not required to recontact Plaintiff's treating physician or order a consultative examination.**

The United States Supreme Court stated in *Sims v. Apfel*, 530 U.S. 103, 103-104 (2000) (citing *Richardson*, 402 U.S. at 400-01), that "Social Security proceedings . . . are inquisitorial rather than adversarial" and that the ALJ has the duty "to investigate the facts

and develop the arguments both for and against granting benefits." Thus, the ALJ is charged with developing a full and fair record. *Todd v. Heckler*, 736 F.2d 641, 642 (11th Cir. 1984). This obligation to fully and fairly develop the record is a basic duty of the ALJ. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir. 1986); *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982); *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981). Additionally, the Commissioner has a duty to develop the record if existing evidence, both medical and non-medical, is inadequate to make a disability determination or is insufficient to support a decision on a claim; this can be achieved by recontacting the plaintiff's treating physician. *See* 20 C.F.R. § 416.912(e) (2011) ("*Recontacting medical sources*. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision."); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (citing *Ford v. Secretary of Health and Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981) (Unit B). An ALJ can also order a consultative examination, though this is not required. *See* C.F.R. § 416.919a(2)(b) (2011); *see also Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988) (recognizing that an ALJ has the discretion not to order a consultative examination).

Plaintiff asserts that the statements and facts relied upon by Dr. Jackson in making her determination were no longer true by the time of the hearing, which creates an inconsistency between Dr. Jackson's determination, which she made without having the opportunity to review any psychiatric records after January 13, 2010 (Tr. 192-209) and

Dr. Meghani's August 2010 opinion (Tr. 220-222). *See* Doc. 10 at 7. As a result, Plaintiff asserts, the ALJ's decision was based on an insufficient record which prevented her from making an informed decision regarding disability, which in turn created the duty to fully and fairly develop the record either by recontacting Dr. Meghani or by referring Plaintiff to a consultative examination. *See* Doc. 10 at 7-8.

However, the record before the ALJ was fully and fairly developed, which precludes any need to recontact a treating physician or order a consultative exam. *Osborn v. Barnhart*, 194 Fed. Appx. 654, 668-69 (11th Cir. 2006) (where the court found that the ALJ did not have to recontact the treating physician because there was no need for additional information or clarification – substantial evidence supported the ALJ's determination that the claimant was not disabled). As more clearly discussed above, Dr. Meghani's August 2010 opinion was properly discounted and not afforded any significant weight. Tr. 35-36. Additionally, the medical records from Enterprise Behavior Health between Plaintiff's initial October 2008 evaluation and April 2011, including Dr. Meghani's September 2011 and April 2011 assessments, consistently show that Plaintiff exhibited a normal current mental status and that she was fully alert, had fair to good attention span, and exhibited goal-directed thought processes and appropriate affect, and normal behavior and psycho motor activity. Tr. 184-191, 210-215, 216-219, 223-224. Further, Dr. Meghani's August 2010 opinion does not include any supporting clinical or diagnostic reasoning. Tr. 220-222. Based on the medical records, most notably in the form of opinions by other physicians and Dr. Meghani himself, this Court concludes that the ALJ's decision is supported by substantial evidence.

Furthermore, Plaintiff appears to confuse the lack of record support for an opinion with a lack of clarity in the opinion that might require recontacting a treating physician or ordering a consultative exam. The record, including Dr. Meghani's August 2010 assessment, is not so ambiguous as to warrant further development by the ALJ. The entire record, including Dr. Meghani's August 2010 assessment, clearly provides the ALJ with the necessary information to determine Plaintiff's impairments, residual functioning capacity, ability to work, and ultimately, whether Plaintiff is disabled. *See Robinson v. Astrue*, 365 F. Appx. 993, 999 (11th Cir. 2010) (where an ALJ did not err by not requesting an additional consultative examination or by failing to recontact treating or examining physicians where the ALJ had all of the information necessary to properly determine the plaintiff's impairments, residual functional capacity, and ability to work); *compare* 20 C.F.R. § 416.912(e)(1) (2011) ("We will seek additional evidence or clarification from your medical source when the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory techniques) *with* § 416.927 (addressing factors to be considered when weighing opinion evidence, including consistency and supportability of the opinion).

This court concludes that the evidence as it stands is not so ambiguous as to require the ALJ to recontact the examining physician or order a consultative examination. The ALJ's finding that Plaintiff is not disabled is supported by substantial evidence, illustrated by the consistent findings of multiple physicians, including Dr. Meghani.

## VII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion,

the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.** A separate judgment is entered herewith.

DONE this 18th day of February, 2014.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE